1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

United States District Court
Northern District of California

| | |
|---|---|
| **RONGXIANG XU AND MEBO INTERNATIONAL, INC.,** | **Case No.: 13-CV-3240 YGR** |
| **Plaintiffs,** | **ORDER GRANTING SPECIAL MOTION TO STRIKE OF DEFENDANT SHINYA YAMANAKA** |
| **v.** | |
| **SHINYA YAMANAKA,** | |
| **Defendant.** | |

16    Plaintiffs Rongxiang Xu ("Xu") and MEBO International, Inc. ("MEBO") (collectively,

17  "Plaintiffs") originally filed their action in San Francisco Superior Court on May 8, 2013, against

18  Defendant Shinya Yamanaka ("Yamanaka").  Plaintiffs filed a First Amended Complaint ("FAC")

19  on May 21, 2013 and served Yamanaka with the FAC and summons on June 12, 2013.  Plaintiffs

20  alleged claims for slander of title, defamation, negligent interference with prospective economic

21  advantage, trade libel and unfair competition under the California Unfair Competition law

22  ("UCL"), Cal. Bus. & Prof. Code section 17200.[1]  Yamanaka removed this action to the federal

23  court on diversity grounds through a Notice of Removal filed July 12, 2013.  Yamanaka thereafter

24  filed his Motion to Dismiss or Alternatively Special Anti-SLAPP Motion to Strike the First

25  Amended Complaint.  The special motion to strike is brought with reference to California Code of

26  Civil Procedure section 425.16, which permits a court to strike claims arising from exercise of free

27

28

---

[1]  In their opposition, Plaintiffs withdrew all claims other than their claim under the UCL.

1    speech rights under the United States or California Constitution.  Cal. Code Civ. Proc. §

2    425.16(b)(1).

3            Having carefully considered the papers submitted, the pleadings in this action, and the

4    arguments of the parties at the hearing held on October 8, 2013, and for the reasons set forth below,

5    the Court hereby **GRANTS** the Special Motion to Strike.

6    **I.        BACKGROUND**

7            Plaintiffs allege that Xu invented a method for regeneration of human tissue. (FAC ¶¶ 7, 8.)

8    Specifically, Plaintiffs allege that "Xu is the first and only person to have obtained a patent for

9    'inducing *in situ* human somatic cells into pluripotent stem cells and then regenerating

10   physiological tissue and organ.'"  (FAC ¶ 9.)  Xu's research is in a method to induce fully

11   developed cells to convert into pluripotent stem cells *in situ* (*i.e.*, in the natural or original position

12   in the human body) by a method known as "iPS" or "iPSC," which stands for "induced pluripotent

13   stem cells."  Xu is the founder of Plaintiff MEBO International, Inc., which is a holding company

14   for Xu's intellectual property developed in the course of his work and studies.

15           Yamanaka is a scientist who won the Nobel Prize in Physiology or Medicine in 2012 for his

16   research showing that adult skin cells could be reprogrammed into pluripotent cells.  The award

17   was based upon Yamanaka's publication in which he took skin cells from the body and transferred

18   genes into these cells, in vitro, so that they had similar functions of stem cells.  (FAC ¶ 10.)

19   Yamanaka labeled his artificial cells as "induced pluripotent stem cells" or "iPSC."  The June 14,

20   2012 article by Yamanaka entitled "Induced Pluripotent Stem Cells: Past, Present, and Future"

21   ("the Article"), in which he discusses the history and future outlook of "iPSC" technology, was

22   published in the *Cell Stem Cell* journal.  (FAC ¶ 10.)  In the Article, Yamanaka was quoted as

23   saying "[i]n 2006, we showed that stem cells with properties similar to ESCs ('embryonic stem

24   cells') could be generated from mouse fibroblasts by simultaneously introducing four genes.  We

25   designated these cells as iPSCs." *Id.*  Plaintiffs also allege that Yamanaka used his position as the

26   editor for several scientific journals to feign an ability to induce somatic cells into pluripotent stem

27   cells and called them "iPSCs."  (FAC ¶ 12.)

28

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   Plaintiffs contend that Yamanaka's research on artificial cells has nothing to do with stem

2   cells and that his use of the term "pluripotent stem cells," is confusing and misleading. (FAC ¶11.)

3   Plaintiffs allege that Yamanaka has created a man-made cell *in vitro* (*i.e.*, outside the living body

4   and in an artificial environment) that is not equivalent to a pluripotent stem cell existing *in situ,* and

5   that Yamanaka should not be using the term iPSC for his method.  Plaintiffs further allege that

6   Yamanaka's misuse of the term iPSCs has affected the vendibility of Xu's patents, as well as his

7   ability to obtain investment, grant and research monies related to "iPS" or "iPSC."  (FAC ¶ 12.)  By

8   using the term "iPSCs," Yamanaka usurped the "public recognition, funding, and prestige" that

9   "legally belongs" to Xu.  (FAC ¶ 12.)  Yamanaka's mislabeling of his process as "iPSC" has

10   brought him fame and recognition as a Nobel prize winner, as well as various awards, grant and

11   research monies, and other forms of compensation, which would have been directed to Xu and

12   MEBO.[2]

13   **II.   DISCUSSION**

14   Yamanaka brings this motion seeking to strike the FAC under section 425.16 of the

15   California Code of Civil Procedure.  California enacted this statute to curtail "strategic lawsuits

16   against public participation," known as "SLAPP" actions, finding "a disturbing increase in lawsuits

17   brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and

18   petition for redress of grievances." Cal.Civ.Proc.Code § 425.16(a).  This Court, sitting in diversity,

19   follows the California courts' two-step process for analyzing an anti-SLAPP motion.  *Hilton v.*

20   *Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).  First, the moving party must make "a

21   threshold showing ... that the act or acts of which the plaintiff complains were taken 'in furtherance

22   of the right of petition or free speech under the United States or California Constitution in

23   connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer*

24   *Cause, Inc.,* 29 Cal.4th 53, 67 (2002) (quoting Cal. Code Civ. Proc. § 425.16(b)(1)).  The moving

25   party does so by showing that act underlying the complaint fits one of the categories spelled out in

26   section 425.16(e).  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (citing *Braun v. Chronicle*

27

28   [2]  The Court notes that Plaintiffs do not allege any patent infringement or other claims related to Xu's intellectual property.

3

1   *Publishing Co.*, 52 Cal.App.4th 1036, 1043 (1997).)  Once such a showing is made, the burden

2   shifts to the complainant to show that there is a probability of prevailing on the complaint.

3   *Navellier,* 29 Cal.4th at 88.  The statute focuses not on the form of the plaintiff's claim, but the

4   underlying nature of the defendant's activity giving rise to the asserted liability.  *Tuchscher Dev.*

5   *Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1232 (2003).

6   **A.      Protected Activity**

7   Here, the Court looks first to whether Yamanaka has established that Plaintiffs' claims arise

8   from protected speech or actions.  Section 425.16(e) defines a variety of activity that is considered

9   protected under the anti-SLAPP statute, which includes "any written or oral statement or writing

10  made in a place open to the public or a public forum in connection with an issue of public interest."

11  Cal. Civ. Proc. Code § 425.16(e)(3).  "A 'public forum' traditionally has been defined as a place

12  that is open to the public where information is freely exchanged." *Nygard, Inc. v. Uusi-Kerttula*,

13  159 Cal. App. 4th 1027, 1036 (2008).  A magazine is such a public forum.  *Id.* at 1039.  "[A]

14  newspaper or magazine need not be an open forum to be a public forum—it is enough that it can be

15  purchased and read by members of the public." *Id.*  Although Cal. Civ. Proc. Code § 425.16 does

16  not define "public interest," its preamble states that its provisions "shall be construed broadly" to

17  safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the

18  redress of grievances."  Cal. Civ. Proc. Code § 425.16(a).

19  The claims here are alleged to arise from the Article published in *Cell Stem Cell*—the

20  journal of the International Society for Stem Cell Research.  (FAC ¶ 10.)  Access to *Cell Stem Cell*

21  journal is available to anyone who pays for a subscription.  The issue of stem cell research is one of

22  interest to the public, as is supported by the allegations of the FAC itself.  (*See* FAC ¶ 8, 10, 13

23  [advances in stem cell research could lead to the cure disease and have been awarded the Nobel

24  Prize, as well as recognized by the U.S. President, as a significant scientific breakthrough].)

25  Plaintiffs argue that, even if the Article would ordinarily be considered protected speech or

26  activity, the statute exempts claims arising from commercial speech under certain circumstances

27  which apply here.  Section 425.17(c) exempts a claim arising from commercial speech from the

28  protections of the anti-SLAPP statute when:

United States District Court
Northern District of California

4

1

2

    (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;

3

    (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;

4

5

    (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and

6

7

    (4) the intended audience for the statement or conduct meets the definition set forth in Cal. Code Civ. Proc. § 425.17(c)(2) (*i.e.,* an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer).

8

9

Cal. Code Civ. Proc. § 425.17(c).  California courts have held that the "so-called commercial

10

speech exemption ... is a statutory exception to section 425.16 and 'should be narrowly construed.'"

11

*Hawran v. Hixson,* 209 Cal.App.4th 256, 271 (2012) (citing *Simpson Strong–Tie Co., Inc. v. Gore*,

12

49 Cal. 4th 12, 22 (2010)).  Yamanaka counters that the commercial speech exemption does not

13

apply to publication in scientific journals, which are expressly excepted from its application by

14

section 425.17(d)(1) (excepting "*any person engaged in the dissemination of ideas* or expression in

15

any book or *academic journal*, while engaging in the gathering, receiving, or processing of

16

information for communication to the public," emphasis supplied).  Plaintiffs have the burden of

17

demonstrating that the commercial speech exemption applies. *Rivera v. First DataBank, Inc.*, 187

18

Cal. App. 4th 709, 717 (2010).

19

   Plaintiffs do not and cannot demonstrate that the Article is "commercial speech" not

20

protected under the statute.  Plaintiffs simply argue that Yamanaka has used the publication to

21

"sell" his academic research and obtain grant money for that research.  The Article does not fit into

22

the narrow exception created in the statute.  Plaintiffs do not plausibly allege that Yamanaka is

23

"primarily engaged in the business of selling or leasing goods or services" or that the Article was

24

made for the purpose of obtaining, promoting, or securing sales, leases or commercial transactions.

25

Cal. Code Civ. Proc. § 425.17(c).

26

   Plaintiffs' citations to *Kasky v. Nike,* 27 Cal.4th 939, 960 (2002) and similar cases denying

27

protected status to advertisements or other speech concerning the sale of various products, are

28

United States District Court
Northern District of California

1  distinguishable.  As the *Kasky* court noted, determining what constitutes commercial speech

2  requires that a court look to "the speaker, the intended audience, and the content of the message."

3  *Kasky,* 27 Cal.4th at 960.  Unlike *Kasky*, there is no showing that Yamanaka is in a commercial

4  enterprise, that the Article was directed to an audience of potential purchasers of any product or

5  service from Yamanaka, or that the content of the speech concerned any commercial enterprise.

6  Moreover, unlike the commercial speech issues discussed in *Kasky*, the commercial speech

7  exception here is specifically codified in the statute and has its own meaning and exceptions.

8  Section 425.17 represents the California legislature's reasoned judgment about what exceptions and

9  exemptions should be provided in the anti-SLAPP motion context.  Here, there is a specific,

10  codified exception to the commercial speech provision, within which the Article at issue squarely

11  falls.

### B.        Probability of Prevailing

13         Turning to the second prong, Plaintiffs must put forward evidence to show that they are

14  likely to prevail on their UCL claim.  Plaintiffs must state a legally sufficient claim and must

15  support that claim with a sufficient prima facie evidentiary showing to sustain a favorable

16  judgment, assuming that evidence is credited.  *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th

17  1027, 1044 (2008).  The standard applied for an anti-SLAPP motion—probability of prevailing on

18  the merits—presents a higher burden than the plausibility standard applied for a motion to dismiss.

19  If Plaintiffs cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then

20  Plaintiffs as a matter of law cannot meet the probability of success on the merits standard.  *Hilton*,

21  599 F.3d at 902 (finding that a defendant who was unsuccessful on a motion to dismiss could still

22  prevail on the anti-SLAPP motion to strike because the plaintiff may state "a legal claim" but may

23  not have "facts to support it").

24         Yamanaka argues that Plaintiffs have not pleaded facts sufficient to establish their UCL

25  claim for fraudulent conduct.[3]  To establish standing to pursue this claim, Plaintiffs must allege a

26  plausible claim of injury as a result of Yamanaka's actions.  *See* Cal. Bus. & Prof. Code § 17204.

27

28         [3]  In their opposition to the motion, Plaintiffs clarify that they are relying only on the
fraudulent prong of the UCL.  (Oppo. at 14:22-16:11.)

United States District Court
Northern District of California

1    Under the UCL, plaintiffs only have standing to bring an action if they have "suffered injury in fact

2    and ha[ve] lost money or property as a result of the unfair competition" *Id*.

3           Plaintiffs contend that they have offered evidence to support standing.  In his declaration,

4    Xu states that MEBO approached Merrill Lynch to solicit investors for funding the expansion of its

5    business operations in the United States.  (Xu Declaration, Dkt. No. 19, at ¶ 10.)  Xu states that

6    "[a]t first, it appeared Merrill Lynch would perform these investment solicitation services for

7    [MEBO], but later put the project on hold" because Merrill Lynch was "uncertain whether to do

8    business with Yamanaka or MEBO International, Inc., due to the competing uses of the [terms

9    "iPSC" and "iPS."]"  *Id.*

10          Construing this evidence in the light most favorable to Plaintiffs, it is still insufficient to

11   state a prima facie case that they suffered injury in fact and lost money or property as a result of the

12   unfair competition alleged here.  At best, Xu declared that Merrill Lynch was *planning to solicit*

13   investors for Plaintiffs.  Any money or property to be gained as a result of that solicitation is purely

14   speculative.  Even if Plaintiffs could demonstrate that Merrill Lynch declined to work with them as

15   a result of Yamanaka's use of certain phrases or acronyms in the Article (or other research),

16   Plaintiffs have still not demonstrated a likelihood that they could establish an injury in fact that is

17   more than speculation.  *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 690 (2010)

18   ("Plaintiffs' UCL claim also fails because they have not demonstrated they suffered injury in fact

19   and [have] lost money or property as a result of the unfair competition.")

20          Further, Plaintiffs have not alleged specific facts, much less offered evidence, to support a

21   claim that Yamanaka's use of the terms "induced pluripotent stem cells," "iPS," or "iPSC" in

22   scientific publications – publications which apparently describe and therefore distinguish

23   Yamanaka's methods from Xu's (as the FAC pleads) – would mislead or deceive members of the

24   public or the scientific community.  *Vess v. Ciba-Geigy Corp. USA,* 317 F. 3d 1097, 1103 (9th Cir.

25   2003).  Plaintiffs' allegations that Yamanaka's use of the terms is a "continuing threat to members

26   of the public in that they are likely to be deceived as to veracity of Dr. Yamanaka's research and

27   the inherent risk of cancer" (FAC ¶35) are conclusory and lacking in even basic evidentiary support

28   to defeat an anti-SLAPP motion.

**III.    CONCLUSION**

Accordingly, the Special Motion to Strike pursuant to California Code of Civil Procedure section 425.165 is **GRANTED**.  Plaintiffs' First Amended Complaint is **STRICKEN**.

Defendant is entitled to an award of attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 425.16(c).  *See Vargas v. City of Salinas,* 200 Cal.App.4th 1331, 1340 (2011) (an award of attorneys' fees to a prevailing defendant on a SLAPP motion is mandatory).

This terminates Docket No. 11.

**IT IS SO ORDERED**.

Date: January 30, 2014

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

8