**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RONGXIANG XU AND MEBO INTERNATIONAL, INC.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SHINYA YAMANAKA,**<br><br>**Defendant.** | Case No.: 13-CV-3240 YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES** |

Defendant has filed a motion for attorneys' fees. Defendant Shinya Yamanaka moves this Court for the attorneys' fees incurred in connection with his Special Anti-SLAPP Motion to Strike the First Amended Complaint ("FAC") or, in the Alternative, Motion to Dismiss (the "Anti-SLAPP Motion"). (Dkt. No. 32.) On January 30, 2014, the Court granted Defendant's Anti-SLAPP Motion and entered judgment in his favor. (Order, Dkt. No. 29, and Judgment, Dkt. No. 30.)

The Court's Order struck the FAC in its entirety under California Code of Civil Procedure § 425.16. (Order at 8.) The Court found that the claims in the FAC arose from protected activity and were not protected by the commercial speech exception, and that Plaintiffs had failed to offer evidentiary support sufficient to show that they were likely to succeed on the merits of the claims. The Court further found that, as a prevailing party under the Anti-SLAPP statute, Defendant was entitled to attorneys' fees and costs in an amount to be determined by a further motion. Hence, Defendant's entitlement to fees is not at issue in this motion, only the amount to be awarded.

Plaintiffs Rongxiang Xu and MEBO International, Inc. oppose the motion on the grounds that the amount of attorneys' fees sought is unreasonable and that the Court should postpone is decision until the recently filed appeal has been resolved.

Having carefully considered the papers submitted and the pleadings in this action, as well as the record of the action herein, the Court **ORDERS** that Defendant's Motion for Attorneys' Fees is **GRANTED IN PART** and that Defendant is entitled to attorneys' fees in the amount of **$86,687.16.**

## I.   STANDARDS APPLICABLE TO THIS MOTION

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs," under California Code of Civil Procedure section 425.16(c). *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (prevailing party entitled to attorneys' fees upon granting motion absent narrow exception for certain Government Code claims enumerated in section 425.16(c)(2)). Reasonable fees include those incurred in connection with the attorney fee motion itself. *See Ketchum*, 24 Cal.4th at 1141; *Blackburn v ABC Legal Servs., Inc.*, 11-CV-01298 JSW NC, 2012 WL 1067632 (N.D. Cal. Feb. 24, 2012); *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181-82 (S.D. Cal. 2008).

The district court has broad discretion to determine a reasonable award of attorney fees, and must provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *see also Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985) (court should provide an explanation of the reasonable hours and hourly rate it uses to arrive at fee award). In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262.

In calculating a reasonable number of hours, the applicant must justify his or her claim by submitting detailed time records. *See Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The court must review the time records to determine whether the hours are

adequately documented in a manner that can be properly billed directly to clients. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The court may adjust these hours down if it believes the documentation to be inadequate, if the hours were duplicative, or if they were either excessive or unnecessary. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986). The Court also must assess whether the hours claimed are vague, block-billed, excessive, and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012).

The court's determination of reasonableness also considers the hourly rates claimed. Generally, fees must be calculated according to the prevailing market rates in the forum district. *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (alteration in original) (quoting *Jordan*, 815 F.2d at 1263). A court may rely on its own experience to determine whether the hourly rates and the expended number of hours are reasonable. *Van Gerwen*, 214 F.3d at 1045. Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 782–83 (2002).

**II.    DISCUSSION**

**A.    Hours**

Yamanaka requests an award of attorney fees for 186.3 hours that his counsel spent on work related to the Anti-SLAPP Motion, plus certain costs. The award sought breaks down as follows:

| HOURS CLAIMED IN DEFENDANT'S MOTION FOR ATTORNEYS' FEES ||||| 
|---|---|---|---|---|
| **NAME** | **TITLE/ EXPERIENCE** | **HOURS** (SLAPP + Fee Motion + Fee Reply) | **RATE (2013) (2014)** | **TOTAL** |
| Christopher Cox | Attorney/ 23 yrs | (28.4 + 3.1 + 1) = **32.5** | $855 $891 | |
| Bambo Obaro | Attorney / 4yrs | (97.9 + 14.9 + 4) **116.8** | $589.50 $661.50 | |
| Jessica Mohr | Attorney / 1 yr | (60 + 21.5 + 5) =**86.5** | $405 $499.50 | |
| **TOTAL HOURS** | | **235.8** | | |
| **REQUESTED LODESTAR:** |||| $135,686.25 |
| **REQUESTED COSTS** |||| $812.16 |
| **TOTAL REQUEST FOR FEES AND COSTS** |||| $136,498.41 |

Of the hours sought, a total of 139.8 were incurred in connection with the Anti-SLAPP Motion (74.9 on the motion and 64.9 on the reply). On the attorney fee motion, Defendant claims 49.5 hours. With respect to the Anti-SLAPP Motion, Defendant contends that the amount of hours incurred was reasonable given that the area of law was complex and the complaint involved a novel combination of claims which, while sounding similar to patent infringement, actually set forth theories of defamation, slander of title to intellectual property, trade libel, and unfair competition based thereon. Defendant argues that these novel theories required additional research time.

Plaintiffs raise three objections to the hours sought: duplicative billings; records lacking in detail; and excessive amounts of time spent, particularly on the reply to the Anti-SLAPP motion.

### 1. *Duplicative Billings*

Plaintiffs argue that the amount of fees sought is unreasonable because there are duplicative billings. Plaintiffs contend that a large proportion of these hours simply indicate that they were "revisions and edits" to the motion and reply brief by the junior associates. Of the total 139.8 hours spent on the Anti-SLAPP Motion, 82.9 were spent on "revisions and edits," some billed by both Obaro and Mohr on the same day. Plaintiffs argue that duplicative billing and simultaneous entries indicate that the case was being used as a "teaching" file for the younger associates.

The Court agrees that many of the hours billed as editing and revising by Mohr and Obaro should be reduced as duplicative or, at least, inefficient billings. Having reviewing the billing records in detail, the Court finds that a reduction of hours on the motions to 96 (from 116.8) by Obaro and 69 (from 86.5) by Mohr is reasonable.

### *2.     Vagueness of Billing Records*

Plaintiffs take issue with time entries that say little more than "edit and revise" the motion, contending they give, at least, an appearance of inefficiency. Plaintiffs maintain that the vagueness of the billing records supports a further reduction of the hours.

The Court does not find the entries so vague as to warrant an additional reduction on these grounds. The entries are not block-billed. They reference the Anti-SLAPP Motion with sufficient clarity.

### *3.     Excessive Amount of Time on Reply*

Plaintiffs also argue that Defendant's counsel spent an excessive amount of time on drafting the reply to the Anti-SLAPP Motion considering that their opposition conceded four of the five causes of action should be dismissed. The Court does not agree.

First, Plaintiffs' Opposition conceded only that certain claims should be dismissed under Rule 12(b)(6) with leave to amend, not stricken in connection with the Anti-SLAPP motion. (Oppo. to Anti-SLAPP Motion, Dkt. No. 18, at 7 n. 6.) Thus, Defendant was required to respond to the Plaintiffs' First Amended Complaint in its entirety in demonstrating that there was no probability of success on the merits. (*See* Reply, Dkt. No. 21, at 6: 20-8:14.) More significantly, Plaintiff's Opposition raised a new, novel defense not covered by the moving papers. Specifically, Plaintiffs argued that publication in a scientific journal constituted "commercial speech" and thereby fell under exemption from the Anti-SLAPP statute in Section 425.17(c) of the California Code of Civil Procedure. Thus, Defendant was required to conduct additional research on this new point in connection with the reply.

### *4.     Lack of Substantiation for Time on Attorney Fee Motion Reply*

Because Defendant only estimated its projected hours for the reply brief on the attorney fee motion, and never supplemented the record to substantiate the actual hours, the Court declines to

award the hours claimed for that task.  Hence, the billable hours have been reduced by the estimated hours for the reply brief (1 hour for Cox, 4 hours for Obaro, and 5 hours for Mohr).

> ### 5. *Summary of Hours to Be Included in the Final Lodestar*

Based upon the foregoing, the Court summarizes the hours to be awarded as follows:

| HOURS AWARDED BY THE COURT ||
|---|---|
| **NAME** | **HOURS** |
| Christopher Cox | 31.5 |
| Bambo Obaro | 96 |
| Jessica Mohr | 69 |
| **Total** | **196** |

### B. Hourly Rates

Defendant argues that the hourly rates sought are reasonable, particularly in light of the fact that they have given a 10% discount off the top.  Plaintiff contends that the rates sought are exorbitant and not in keeping with market rates for similar attorneys and work.

In support of the rates sought, Defendants offer the declaration of Christopher J. Cox, a 2013 National Law Journal Billing Survey summarizing the average billing rates of partners and associates in the largest office locations at 159 of the largest firms throughout United States, and the Declaration of Derek Smyth, attaching additional survey data.  The Cox Declaration states that the Weil firm's billing rates are within the range of those for other top tier, national law firms with offices in the Bay Area.  It attaches a copy of the 2013 National Law Journal Billing Survey, which Cox opines is consistent with his own understanding of prevailing rates for similar law firms in the Bay Area.  Cox further declares that he is a partner with over 23 years litigation experience in federal and state court, admitted to practice in 1990.  He declares that his hourly rates charged in this matter, $855 per hour in 2013 and $891 per hour in 2014, are reasonable given his education and experience, and are well within the range of other partners at top tier, national law firms with offices in the Bay Area.  Cox's declaration also states that the rates sought for Obaro and Mohr are reasonable given their education and experience.  Obaro earned his J.D., *cum laude*, from the

University of San Francisco, and was admitted to practice, in 2009, with almost 4 years of experience litigating complex matters in both state and federal court at the time of the motion. The firm billed his time at $589.50 per hour in 2013 and $661.50 in 2014. Mohr earned her J.D., *cum laude*, from the University of San Francisco in 2012, and had almost 1 year of experience at the time of the motion. The firm billed her time at $405.00 per hour in 2013 and $499.50 per hour in 2014. All three attorneys are based in the Weil Firm's Silicon Valley office.

Defendant also offers the declaration of Smyth, CFO for the Weil Firm and the person responsible for setting the hourly rates for the firm's attorneys consistent with market standards. Smyth's declaration includes data the firm has compiled itself, as well as a survey done for the Firm by Citibank Private Bank Group, comparing Weil's rates with its other major competitors. The Citibank data does not specify who the peer firms are. Instead, it summarizes that, as of the date of the information (2012), partners in the Weil firm averaged $927 per hour, and in "Primary Peers" averaged $997 per hour. For associates, the averages were $581 per hour for the Weil firm and $597 per hour for Primary Peer firms.

The internally gathered data appears to be obtained from fee applications in large, complex litigation. From the internally gathered data for 2013 for partners, the firms include: Cleary; Latham & Watkins; Millbank Tweed; Skadden Arps; Willkie Farr; Davis Polk; Paul Weiss; and Sullivan Cromwell. The Court's cross-check of the cases identified and fee applications referenced indicates that most, if not all, of the fee awards listed were in large, complex corporate restructuring/bankruptcy cases. Few, if any, appear to be rates for attorneys in this district.

The internally gathered data for associates is less detailed. For 2013, the information merely lists the comparator firms (Cleary, Davis Polk, Latham & Watkins, Millbank Tweed, Paul Weiss, Skadden, Sullivan & Cromwell, Willkie Farr), and the hourly rates for associates broken down by first through eighth year of practice. The data gives no indication as to where the rates were awarded or the attorneys based, the nature of the work performed, or any particular attributes of the attorneys.

The Court finds that Defendant's evidence in support of its motion does not fully substantiate the rates sought here, particularly for the associates. Defendant has not sufficiently

7

connected the survey data it offers to the nature of the litigation here. Moreover, the information provided by Defendant is not specific to the local Bay Area market or keyed to the level of experience of the attorneys involved.

There are a number of problems with Defendant's showing. First, Defendant never offers a resume for the Weil firm or other information to establish which firms' rates would be the proper comparators for the rates sought here. The Weil firm apparently has some 1220 attorneys working in more than 20 offices around the world. (*See* http://www.weil.com/about-weil, visited July 21, 2014.) The evidence submitted with the motion does not indicate whether all attorneys at all offices are billed at the same rates or have been awarded these or any particular rates. Likewise, there is no indication of any rates actually awarded in the Bay Area for these or similarly credentialed attorneys. Further, the NLJ Survey billing rate data submitted to the Court provides ranges and averages for partners and for associates without specifying the market(s) in which the rates were billed or breaking down the numbers by years of experience. In short, Defendant's showing in support of the rates sought is less than robust.

Cross-checking the firm's internal data with the NLJ Survey information, the Court summarizes the information provided for four purported peer law firms as to which there was sufficient information from the various sources:

| Rates sought here | | |
|---|---|---|
| Partner | 4-yr Associate | 1-yr Associate |
| $855 (2013), $891 (2014) | $589.50 (2013), $661.50 (2014) | $405 (2013), $499.50 (2014) |

| Firm | Number of Attys | Partner Range | Partner Average | Associate Range | Associate Avg. |
|---|---|---|---|---|---|
| Weil | 1220 | | $927 (2012) | $450-790 | $581 (2012) |
| Citibank Data | | | $997 (2012) | | $597 (2012) |
| Latham & Watkins | 2033 | $895-1110 | $990 | $465-725 | $605 |
| Paul Weiss | 803 | $760-1120 | $1040 | $250-760 | $600 |
| Skadden Arps | 1735 | $845-1150 | $1035 | $340-845 | $620 |
| Willkie Farr | 540 | $790-1090 | $950 | $350-790 | $580 |

Based upon the Court's reading of the generalized data provided, its understanding of market rates for the Bay Area for a firm of the size and community standing of the Weil firm, and the nature and difficulty of the litigation, and in light of comparable rates that the Court has approved previously, the Court finds that the following rates are reasonable for the attorneys billed in this litigation: Christopher Cox, $850 per hour; Bambo Obaro, $400 per hour; and Jessica Mohr, $300 per hour.

### C. Costs

In addition to attorneys' fees, Defendant seeks $812.16 in reasonable litigation expenses, consisting of $754.67 charges for computerized legal research in connection with the Anti-SLAPP Motion, and $57.49 travel expenses for counsel's transportation to the hearing on the Anti-SLAPP Motion. A prevailing defendant on an anti-SLAPP motion is entitled to recover reasonable litigation expenses for which he was billed. Included in the costs sought here are charges for computer-assisted legal research. *See Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (noting circuit split as to whether expenses for computer-based legal research are compensable as a separate item under the umbrella of reasonable attorneys' fees, and finding that they may be recovered separately to the extent consistent with the prevailing practice in the local community). Defendant argues that it is the prevailing practice in the Bay Area legal community to bill clients separately from attorney hourly rates for computerized legal research and transportation. *See Limo Hosting v. Fiks*, No. C 08-2474 BZ, 2010 WL 55876, at *3 (N.D. Cal. Jan. 4, 2010) (awarding defendant a portion of their claimed computer research charges); *see also Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1105 (N.D. Cal. 2010) (allowing recovery of expenses associated with online legal research, photocopying, and travel expenses where there was supporting documentation that such fees were routinely billed to the client).

Plaintiffs offered no opposition to the request for reasonable litigation expenses. The Court therefore awards $812.16 in reasonable litigation expenses in addition to the reasonable attorneys' fees state above.

//

### D. Deferral Until Decision On the Appeal

Plaintiffs argue that, since they filed Notice of Appeal to the Ninth Circuit, and this Court's decision could be reversed, decision on the amount of attorney's fees should be postponed until which time as the appeal has been completed. Plaintiffs offer no authority to suggest that such a course is warranted here. The Ninth Circuit has held that that an appeal from the merits does not foreclose an award of attorneys' fees by the district court. *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). The district court's continuing jurisdiction to award fees may prevent delay and duplication at the appellate level. *Id.* at 956-57. A prompt decision by the district court permits any appeal of the attorney fee order to be consolidated with the appeal on the merits. *Id.* at 957. Accordingly, the Court declines to defer a ruling on the attorneys' fees motion.

## III. CONCLUSION

Based upon the foregoing, the Court awards Defendant Dr. Shinya Yamanaka attorneys' fees and costs under California Code of Civil Procedure section 425.16 as follows:

| HOURS CLAIMED IN DEFENDANT'S MOTION FOR ATTORNEYS' FEES | | | |
|---|---|---|---|
| **NAME** | **HOURS** | **RATE** | **TOTAL** |
| Christopher Cox | 31.5 | $850 | $26,775 |
| Bambo Obaro | 96 | $400 | $38,400 |
| Jessica Mohr | 69 | $300 | $20,700 |
| **LODESTAR:** | | | $85,875 |
| **COSTS** | | | $812.16 |
| **TOTAL AWARD FOR FEES AND COSTS** | | | **$86,687.16** |

The Clerk is directed to add this amount to the judgment in this matter.

This Order terminates Dkt. No. 32.

**IT IS SO ORDERED**.

Date: August 1, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**